UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Amreya R.S.,[1]

              Petitioner,                         Case No. 19-cv-3042 (NEB/LIB)

     v.
                                    **REPORT AND RECOMMENDATION**

William Barr, et al.,


              Respondents.

This matter comes before the undersigned United States Magistrate Judge upon Petitioner Amreya R.S.'s Petition for Writ of Habeas Corpus. [Docket No. 1]. The present case has been referred to the undersigned pursuant to a general referral in accordance with the provisions of 28 U.S.C. § 636 and Local Rule 72.1.

For the reasons set forth herein, the Court recommends that the Petition for Writ of Habeas Corpus, [Docket No. 1], be **GRANTED in part and DENIED in part**.

I.     **Background**

On December 6, 2019, Petitioner, an individual in the custody of the Immigration and Customs Enforcement (hereinafter "ICE") currently house at the Kandiyohi County Jail in Willmar, Minnesota, filed the present Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Pet. [Docket No. 1]). Petitioner argues her continued detention violates her due process rights because her detention is "unreasonably" prolonged. (See, Id.).

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in immigration matters such as the present matter. Accordingly, where the Court refers to Petitioner by her name, only her first name and last initial are provided.

Petitioner is a native of Ethiopia. (Id. at 3). She "first entered the United States as a lawful permanent resident in 2012 and has been continuously present in the United States since that time." (Id.).

On February 20, 2015, the "Hennepin County District Court at Minneapolis" convicted Petitioner of Manslaughter in the First Degree and sentenced" her to an eighty-six month term of imprisonment based on her role in the death of her husband. (Minner Decl., [Docket No. 9], at 2). As part of her defense, Petitioner alleged that her husband's death occurred in a struggle which commenced only after he attacked her, and after he had long subjected her to physical, mental, and sexual abuse on a daily basis. (See, Pet. [Docket No. 1]).

On June 25, 2016, ICE served Petitioner with a Notice to Appear in removal proceedings. (Minner Decl., [Docket No. 9,] at 3). However, on March 7, 2016, an immigration judge granted Petitioner's request to terminate removal proceedings pending Petitioner's direct appeal of her state court conviction. (Id.).

On September 28, 2016, after the conclusion of Petitioner's direct appeal of her conviction, ICE served Petitioner with another Notice to Appear in removal proceedings. (Id.). That Notice alleged Petitioner was removable based on a conviction of a crime involving moral turpitude and an aggravated felony crime of violence. (Id.). Petitioner denied the charges of removability, and she filed applications for withholding of removal under the Convention Against Torture and the Immigration and Nationality Act. (See, Pet., [Docket No. 1], at 9).

On January 17, 2018, an immigration judge held that Petitioner's conviction for the crime of manslaughter in the first degree qualified as a crime of violence and a crime involving moral turpitude. (Minner Decl., [Docket No. 9], at 3–4). The immigration judge denied Petitioner's request to terminate the removal proceedings. (Id. at 3).

On March 15, 2018, Petitioner filed a motion to continue her removal proceedings until she completed her state criminal sentence or for a period of six weeks while she prepared additional evidence. (Id. at 4). On March 26, 2018, the immigration judge granted Petitioner a continuance to last until May 21, 2018. (Id.).

On June 8, 2018, Petitioner filed a U visa petition with the United States Citizenship and Immigration Services. (Id.).

On August 30, 2018, an immigration judge denied Petitioner's application for withholding of removal under the Convention Against Torture. (Id.). The immigration judge ordered Petitioner to be removed to Ethiopia. (Id.).

On September 10, 2018, Petitioner was released from the Minnesota Correctional Facility in which she was then housed, and she was immediately taken into the custody of ICE. (Id.). Although she was initially detained at the Sherburne County Jail in Elk River, Minnesota, since February 15, 2019, Petitioner has been detained by ICE at the Kandiyohi County Jail in Willmar, Minnesota. (Id.).

On September 20, 2018, Petitioner appealed the immigration judge's order of removal to the Board of Immigration Appeals (hereinafter "BIA"). (Id.).

On December 18, 2018, Petitioner file a T visa application with United States Citizenship and Immigration Services. (Id.). On the record presently before the Court, that T visa application appears to remain pending.

On February 14, 2019, the BIA affirmed the immigration judge's order of removal. (Id.). Based on this final removal order, ICE initiated removal proceedings regarding Petitioner. (Id. at 4–5). However, on March 11, 2019, Petitioner filed a petition for review with the Eighth Circuit Court of Appeals. (Id. at 5).

On April 29, 2019, Petitioner "filed a motion to reopen and remand to the BIA, seeking reopening and an administrative abeyance (in the form of an extended continuance and/or administrative closure) pending . . . adjudication of her U-[visa] and T-visa petitions." (Id.). Contemporaneously, Petitioner also sought, from the Eighth Circuit Court of Appeals, an extension of time to file her opening brief. (Id.). Over the Government's opposition, the Eighth Circuit Court of Appeals granted Petitioner's request for an extension. (Id.).

On May 14, 2019, Petitioner filed a motion to stay removal with the Eighth Circuit Court of Appeals. (Id. at 7). The Government opposed Petitioner's motion to stay.

On May 15, 2019, ICE conducted a summary "ninety-day post-order custody review, and the next day, served [Petitioner with] a Notice of Decision to continue detention at the Kandiyohi County Jail in Willmar, Minnesota." (Id.).

On June 13, 2019, the Eighth Circuit Court of Appeals granted Petitioner's motion for a stay of removal. (Id.).

At an unspecified time, Petitioner sought a pardon from the Minnesota Board of Pardons. The Minnesota Board of Pardons held an initial hearing on Petitioner's application for a pardon on June 25, 2019. (Id. at 8). "The Pardon Board did not reach a conclusion and continued the hearing until December 18, 2019." (Id.). On the record now before the Court, it appears the December 18, 2019, hearing was canceled, and it has not yet been rescheduled.

On July 12, 2019, the BIA denied Petitioner's April 29, 2019, motion to reopen the proceedings. (Id.). Also on July 12, 2019, the Embassy of Ethiopia issued an Ethiopian travel document for Petitioner which would remain valid until January 11, 2020. (Id.).

On August 12, 2019, Petitioner filed a second petition for review with the Eighth Circuit Court of Appeals. (Id.). Petitioner's second petition challenged the BIA's July 12, 2019, denial

of her motion to reopen her removal proceedings. (Id.). On August 29, 2019, the Eighth Circuit Court of Appeals consolidated Petitioner's two petitions pending before that Court. (Id.).

On December 6, 2019, Petitioner filed the present Habeas Petition in this Court. (Pet. [Docket No. 1]).

On December 30, 2019, United States Citizenship and Immigration Services denied Petitioner's U visa petition. (Minner Decl., [Docket No. 9], at 9).

On December 31, 2019, the Eighth Circuit Court of Appeals reviewed Petitioner's consolidated petitions for oral argument. (Id.). The Eighth Circuit Court of Appeals heard oral arguments regarding Petitioner's consolidated petitions on March 12, 2020. See, Shefa v. Barr, 19-cv-2698 (8th Cir. 2020) (indicating that the Petitioner's consolidated appeal was argued and submitted on March 12, 2020). A decision has not yet been issued. Id.

## II.    Habeas Review

A writ of habeas corpus enables a person detained by the government to challenge the legality of her confinement, and under certain circumstance, if she is successful in her challenge, to obtain her release. See, Preiser v. Rodriguez, 411 U.S. 475, 485 (1973). Title 28 U.S.C. § 2241 confers jurisdiction upon a Federal Court, such as this Court, to hear habeas challenges to the lawfulness of persons detained for immigration related purposed; however, the Court's jurisdiction to do so is limited. Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

This Court may review immigration related detentions to determine if said detentions comport with the demands of the Constitution. Id. This Court lacks the jurisdiction, however, to review a discretionary decision made by immigration authorities, such as the decision to remove an individual from the United States. See, Id. Thus, this Court's task in an immigration related habeas challenge is to assess the constitutional permissibility of the detention itself.

5

### III.    Statutory Basis for Petitioner's Detention

Relevant to the present proceedings, there are two statutory bases for the government's authority to detain noncitizens: 8 U.S.C. § 1226 and 8 U.S.C. § 1231. The parties disagree as to which statute is the basis for Petitioner's current detention.

Section 1226 provides for detention of aliens pending a decision on whether or not an alien is to be removed from the United States. Section 1226(c) mandates detention while removal proceedings are pending for certain aliens who have committed specified crimes. On the other hand, Section 1231, by its own terms, applies only during the 90-day "removal period." This "removal period" commences on the "latest of the" following circumstances: "(i) The date the order of removal becomes administratively final"; "(ii) [i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order"; and "(iii) [i]f the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." 8 U.S.C. § 1231.

In the present case, Respondents argue "the applicable detention statue in this case is 8 U.S.C. § 1231 because the BIA has issued an administratively final order of removal, and the Eighth Circuit's stay of removal has no effect on the finality of that order." (Resps.' Mem., [Docket No. 8], at 8). In support of this assertion, Respondents rely on an administrative interim-decision by the BIA in an unrelated matter, the general structure of the INA, and Respondents' subjective interpretation of the structure of certain "agency regulations." (Id. at 12–15). Respondents acknowledge that these exact arguments have been rejected by "many courts," including Courts in this District, however, Respondents urge this Court to reject the approach of those other Courts. (Id. at 12).

Petitioner argues that "[a]lthough there is an administratively final order of removal in this case from the BIA, the removal period has not begun because the Eighth Circuit granted a stay on June 13, 2019." (Pet., [Docket No. 1], at 12). Therefore, according to Petitioner, "Section 1231's definition of the removal period plainly excludes" her. (Id.). She contends instead that "the statutory removal period cannot begin unless and until the Eight[h] Circuit affirms the BIA and voids the stay," and therefore, her present detention is "governed by § 1226 because [she] is detained 'pending a decision on whether [she] is to be removed from the United States' by the Eighth Circuit." (Pet., [Docket No. 1], at 13).

Petitioner's interpretation of the interplay between § 1226 and § 1231 comports with the consistent precedent of the Court's in this District. See, e.g., Tindi v. Sec'y Dep't of Homeland Sec., No. 17-cv-3663 (DSD/DTS), 2018 WL 704314 (D. Minn. Feb. 5, 2018); Tua Mene Lebie B. v. Barr, No. 19-cv-2177 (JNE/HB), 2019 WL 5747817 (D. Minn. Sept. 18, 2019), report and recommendation adopted, 2019 WL 5715703 (D. Minn. Nov. 5, 2019); Bah v. Cangemi, 489 F. Supp. 2d 905, 916 (D. Minn. 2007). Although Respondents urge this Court to reject the reasoning and holding of the other Courts in this District, Respondents fail to provide any argument in support of that request other than the arguments which have previously and consistently been rejected by the Courts of this District.

Neither § 1226 nor § 1231 expressly address the government's power to detain an individual who has appealed the BIA's determination of final removal and received a stay of removal. However, § 1231 expressly provides that it applies during the "removal period," and it further provides that "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien," then the "removal period" does not begin until "the date of the court's final order." 8 U.S.C. § 1231. Therefore, based on the plain language of § 1231, Petitioner is not

7

presently in a "removal period," and therefore, as the other Courts in this District have held, the authority for Petitioner's detention cannot derive from § 1231 because § 1231 applies only during a "removal period." See, e.g., Tua Mene Lebie B., 2019 WL 5747817, at * 2. The Government's authority to detain Petitioner must therefore derive from another statute.

Several circuits which have considered situations similar to the present case have determined that when there is a judicial stay pending a decision, the Government's authority to detain a noncitizen reverts back to § 1226. See, e.g., Hechavarria v. Sessions, 891 F.3d 49, 51–56 (2d Cir. 2018); Casas-Castrillon v. DHS, 535 F.3d 942, 948 (9th Cir. 2008); Leslie v. Att'y Gen., 678 F.3d 265, 270–71 (3d Cir. 2012). Although the Eighth Circuit has not yet addressed the question of how a judicial stay alters the Government's authority to detain noncitizens, Courts in this District have consistently held that when a noncitizen has been granted a judicial stay of a administratively final order of removal the Government's authority to continue to detain said noncitizen derives from § 1226. See, e.g., Tindi, 2018 WL 704314, at *2; Tua Mene Lebie B., 2019 WL 5747817, at *1–2; Enrique U. R. v. Sec'y of Homeland Sec., No. 19-cv-1063 (MJD/BRT), 2019 WL 4120149, at *2 (D. Minn. June 17, 2019), report and recommendation adopted, 2019 WL 4081129 (D. Minn. Aug. 29, 2019). The undersigned finds the reasoning of these Courts to be persuasive.

As discussed above, a plain reading of § 1231 provides that the authority to presently detain Petitioner cannot derive from § 1231 because Petitioner is not presently within a "removal period" as that period is defined by § 1231. This leaves only § 1226 as the possible source from which the Government may derive authority to detain Petitioner. Therefore, consistent with the other Courts in this District, the undersigned finds that the Government's authority to detain Petitioner is derived from § 1226. Accordingly, the Court will consider Petitioner's detention to

be pursuant to § 1226, and the Court will proceed with an analysis of the constitutionality of Petitioner's detention on those grounds.

## IV.    Statute as Applied to Petitioner's Detention

The United States Supreme Court has explained that even individuals who attain legal immigration status allowing them to be in the United States "do not have an absolute right to remain here." Jennings v. Rodriguez, 138 S. Ct. 830, 837 (2018). An individual initially admitted to the United States may be removed if it is later discovered that she was inadmissible at the time of entry into the United States. See, Id. Or, as in the case of Petitioner, an individual already admitted to the United States may be removed if she is convicted of certain criminal offenses after admission. Id. at 837–38. With respect to the detention of individuals falling into either of these two categories:

> [8 U.S.C. §] 1226(a) sets out the default rule:  The Attorney General may issue a warrant for the arrest and detention of an alien "pending a decision on whether the alien is to be removed from the United States." [8 U.S.C.] § 1226(a). "Except as provided in subsection (c) of this section," the Attorney General "may release" an alien detained under § 1226(a) "on bond . . . or conditional parole." [Id.]

> Section 1226(c), however, carves out a statutory category of aliens who may *not* be released under § 1226(a). Under § 1226(c), the "Attorney General shall take into custody any alien" who falls into one of several enumerated categories involving criminal offenses and terrorist activities. [8 U.S.C.] § 1226(c)(1). The Attorney General may release aliens in those categories "only if the Attorney General decides . . . that release of the alien from custody is necessary" for witness-protection purposes, and "the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceedings." [8 U.S.C.] § 1226(c)(2).

Jennings, 138 S. Ct. at 837–38 (2018) (emphasis in original). In the present case, Petitioner falls into § 1226(c).

"'It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings.' At the same time, however, [the United States Supreme Court] has

recognized [a reasonable period of] detention during deportation proceedings as a constitutionally valid aspect of the deportation process." Demore v. Kim, 538 U.S. 510, 523, 530 (2003) (citation omitted). Specifically, the "detention of deportable criminal aliens pending their removal proceedings . . . serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." Id. at 527–28. Moreover, "detention under § 1226(c) has a 'definite termination point': the conclusion of removal proceedings." Jennings, 138 S. Ct. at 846 (quoting Demore, 538 U.S. at 529).

Less than two years ago, a case before the United States Supreme Court involved arguments similar to those presently before this Court. In Jennings v. Rodriguez, the plaintiffs argued that § 1226(c) does "not authorize 'prolonged' detention in the absence of an individualized bond hearing at which the Government proves by clear and convincing evidence that the . . . detention remains justified." 138 S. Ct. at 839. The plaintiffs in Jennings argued that such prolonged detention without an individualized bond hearing violated the Due Process Clause of the Fifth Amendment. Id. The United States District Court for the Central District of California agreed, and it entered a permanent injunction ordering the Government to provide individual bond hearings. Id. On appeal, the Ninth Circuit Court of Appeals affirmed, but did so based upon its statutory construction of § 1226(c) "to include an implicit 6-month time limit on the length of mandatory detention." Id. at 846–48. In so construing § 1226(c), the Ninth Circuit relied heavily on the reasoning in Zadvydas v. Davis, 536 U.S. 678 (2001), in which the United States Supreme Court construed the statute that governs detention after an order of removal has been issued:

> [The statute] mean[s] that an alien who has been ordered removed may not be detained beyond "a period reasonably necessary to secure removal," and it further

> held that six months is a presumptively reasonable period. After that, the Court
> concluded, if the alien "provides good reason to believe that there is no significant
> likelihood of removal in the reasonably foreseeable future," the Government must
> either rebut that showing or release the alien.

Jennings, 138 S. Ct. 843 (quoting Zadvydas, 533 U.S. at 699, 701). Citing Zadvydas, the Ninth

Circuit in Jennings imposed a similar 6-month limitation on detention during removal

proceedings under § 1226 (c), and it held that, during removal proceedings, a detained individual

"must be given a bond hearing every six months and that detention beyond the initial 6-month

period is permitted only if the Government proves by clear and convincing evidence that further

detention is justified." Jennings, 138 S. Ct. at 839.

   The United States Supreme Court reversed in Jennings, distinguishing the statutes

governing detention after an order of removal has issued, as examined in Zadvydas, from those

governing detention during removal proceedings. Id. at 843–44. The United States Supreme

Court held that, unlike the statutes at issue in Zadvydas, "§ 1226(c) does not on its face limit the

length of the detention it authorizes"; instead, § 1226(c) "makes clear that the detention of aliens

within its scope *must* continue 'pending a decision on whether the alien is to be removed from

the United States.'" Id. at 846 (emphasis in original). Therefore, the United States Supreme

Court in Jennings held that "subject only to express exceptions, §§ 1225(b) and 1226(c)

authorize detention until the end of applicable [removal] proceedings." Id. at 842. However,

because the Ninth Circuit had not reached the petitioners' argument that prolonged detention

under § 1226(c) without an individualized bond hearing is unconstitutional, the United States

Supreme Court remanded the case to the Ninth Circuit for consideration of those constitutional

arguments on their merits. Id. at 851.

   In a persuasive, informative decision from this District analyzing detention under §

1226(c), the Honorable Patrick J. Schiltz noted that "virtually every court that has addresses the

11

issue following <u>Jennings</u>" has utilized a fact-specific inquiry considering several factors as guidance for identifying when "continued detention becomes unreasonable and the Executive Branch's implementation of § 1226(c) becomes unconstitutional unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and dangers to the community." <u>Muse v. Sessions</u>, 2018 WL 4466052, at *3 (D. Minn. Sept. 18, 2018) (quoting <u>Diop v. ICE</u>, 656 F.3d 221, 232 (3d Cir. 2011)). Among those factors are (1) the total length of detention to date, (2) the likely duration of future detention, (3) the conditions of detention, (4) delays of the removal proceedings caused by the detainee, (5) delays of the removal proceedings caused by the government, and (6) the likelihood that the removal proceedings will result in a final order of removal. <u>Id.</u>

Courts in this District have consistently applied the <u>Muse</u> factors to circumstances similar to the present case. <u>See, e.g.</u>, <u>Tao J. v. Sec'y of Dep't of Homeland Sec.</u>, No. 18-cv-1845 (NEB/HB), 2019 WL 1923110, at *3 (D. Minn. Apr. 30, 2019) (applying the same factors); <u>Tua Mene Lebie B.</u>, 2019 WL 5747817, at *5–6. In <u>Muse</u>, the Court found that four of these factors weighed in favor of the petitioner, and on that basis, the Court granted relief to the petitioner. <u>Muse</u>, 2018 WL 4466052, at *3.

In the present case, application of the above factors supports Petitioner's argument that her prolonged continued detention in the instant case violates the Due Process Clause of the Fifth Amendment.

First, in examining the length of detention, the Eighth Circuit has yet to squarely address what constitutes a reasonable length of detention, however, while there is no bright-line rule, other Circuits have weighed in on the issue.[2] Although not controlling, the Third Circuit

---

[2] The Court notes that in <u>Ali v. Brott</u>, No. 19-1244, 2019 WL 1748712, at *2 (8th Cir. Apr. 16, 2019), the Eighth Circuit recently weighed in on the reasonableness of the length of detention for aliens pursuant to § 1226(a). As

characterized nine months as "straining any common-sense definition of a limited or brief civil detention." Chavez-Alvarez v. Warden York Cty. Prison, 783 F.3d 469, 477 (3d Cir. 2015). Similarly, the Sixth Circuit has articulated that "when actual removal is not reasonably foreseeable, criminal aliens may not be detained beyond a reasonable period required to conclude removability proceedings without a government showing of a 'strong special justification,' constituting more than a threat to the community, that overbalances the alien's liberty interest." Ly v. Hansen, 351 F.3d 263, 273 (6th Cir. 2003). "[C]ontinued detention without inquiry into its necessity becomes more and more suspect" as detention continues to extend past the time frame described in Demore. See, gen., Diop, 656 F.3d at 234.

In the present case, Petitioner has been continuously detained for approximately nineteen months without any bond hearing to determine whether or not she is a danger to the community or likely to flee.[3] Petitioner's detention is now significantly longer than the reasonable amount of time contemplated in Demore, which mentioned a month and a half to five months as a reasonable period of time.[4] Furthermore, detentions of a similar extended length as in the present case, as well as several even shorter, have been found elsewhere to violate the Due Process

noted by the Eighth Circuit, however, § 1226(a) gives aliens "more protection against prolonged detention than aliens detained under § 1226(c)." Id. (emphasis in original). Here, Petitioner is detained pursuant to § 1226(c). Further, unlike Petitioner in the present case, the petitioner in Ali had been given a bond hearing while awaiting his final removal order. Thus, Ali v. Brott is distinguishable from the present case.

[3] The Court acknowledges that on May 15, 2019, Petitioner was served with notice that ICE had conducted a summary "ninety-day post-order custody review." (Minner Decl., [Docket No. 9], at 7). That notice informed Petitioner that she would not be released from ICE custody "based on a review of [her] file and/or [her] personal interview and consideration of any information [she] submitted to ICE's reviewing officials." (Ex. 7 [Docket No. 9-7]). It further provided that Petitioner's "conviction for first degree manslaughter indicate [she] may be a danger to the community." (Id.). The notice is singed by the Acting Deputy Field Office Director for the St. Paul, Minnesota Field Office. (Id.). Although the notice purports to have "reviewed" Petitioner's ongoing detention, the "review" does not constitute a formal bond hearing on whether or not Petitioner is a danger to the community or likely to flee.
[4] The Supreme Court described the "brief period" that it held valid: "in the majority of cases," detention pursuant to § 1226(c) in 2003 "lasts for less than . . . 90 days." Demore, 538 U.S. 510 at 529. In the overwhelming majority of cases—85%—"removal proceedings are completed in an average time of 47 days and a median of 30 days." Id. "In the remaining 15% of cases," in which an appeal in Demore was taken, "appeal takes an average of four months." Id. The Court thus concluded that "[i]n sum, the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases." Id. at 530.

Clause. See, e.g., Tao J., 2019 WL 1923110, at *2 (D. Minn. Apr. 30, 2019) (14.5 months);

Muse, 2018 WL 4466052, at *3 (14 months); Sajous v. Decker, 2018 WL 2357266, at *1

(S.D.N.Y. May 23, 2018) (eight months); Gordon v. Shanahan, 2015 WL 1176706, *3 (S.D.N.Y.

March 13, 2015) (eight months); Harpa v. Mumford, 211 F. Supp. 3d 706, 717 n.6 (D. Md. 2016)

(10 months). Therefore, Petitioner's current, ongoing detention which has lasted approximately

nineteen months in duration without any bond hearing weighs heavily in favor of granting

relief.[5]

Second, Courts consider how long the detention is likely to continue in the absence of

judicial relief. In estimating when detention will end, Courts take into account the anticipated

duration of all removal proceedings, including administrative and judicial appeals. Ly v. Hansen,

351 F.3d 263, 272 (6th Cir. 2003) ("The entire process, not merely the original deportation

hearing, is subject to the constitutional requirement of reasonability."). In Muse, for example, the

immigration judge denied the petitioner's claim for relief, and the petitioner promptly appealed

the decision to the BIA. Muse, 2018 WL 4466052, at *6. The Court found that the petitioner

could potentially be detained for up to another 18 months because at the time he filed his

petition, he had just appealed the immigration judge's decision. Thus, the Court reasoned that if

he received an adverse decision from the BIA he then would appeal the BIA's decision to the

---

[5] The Court is aware that for a brief period of time—consisting of the time after the BIA denied Petitioner's appeal but before the Eighth Circuit Court of Appeals granted Petitioner's request for a stay of removal—Petitioner was arguably detained pursuant to § 1231. Nevertheless, regardless of the basis for said detention, it is undisputed that Petitioner has been continuously detained by ICE for a period of approximately nineteen months without any bond hearing. Moreover, Courts in this District when addressing the issue of the constitutionality of a petitioner's detention in cases where the government's authority to detain said petitioner reverted from § 1231 back to § 1226 after a stay of removal was issued have considered the length of the petitioner's detention from the initial date said petitioner was taken in ICE custody. See, e.g., Tua Mene Lebie B., 2019 WL 5747817, at *1, *5. Moreover, the time in which Petitioner was arguably detained pursuant to § 1231 consists of four months, and even if this four months were subtracted from Petitioner's nineteen months of ongoing detention, the Court, for the same reasons discussed herein, would find that even a fifteen month period of detention without any bond hearing weighs in favor of granting relief.

Eighth Circuit. Id. Therefore, the Court concluded that the potentially lengthy appeals process weighed in the petitioner's favor. Id.

In the present case, the future length of the ongoing detention also supports granting Petitioner relief. Like in Muse, Petitioner here could easily be detained for another year or more by the time all appeals have been exhausted. As observed above, Petitioner's various appeals before the Eighth Circuit Court of Appeals have been consolidated, and the Eighth Circuit Court of Appeals has only recently heard oral argument in that consolidate case. See, Shefa v. Barr, 19-cv-2698 (8th Cir. 2020) (indicating that the Petitioner's consolidated appeal was argued and submitted on March 12, 2020). However, as other Courts in this District have recognized, even after the Eighth Circuit Court of Appeals has heard oral arguments it can still be "several months" before an order is issued. See, e.g., Enrique U.R., 2019 WL 4120149, at *3. Moreover, "even after the Eighth Circuit makes a decision, the Government or Petitioner may pursue a rehearing or appeal the decision to the Supreme Court." Tua Mene Lebie B., 2019 WL 5715703, at *4. Therefore, given the likelihood of continued, prolonged detention absent judicial relief, this factor weighs heavily in favor of granting relief.

Third, Courts consider the conditions of the alien's detention. Aliens held under § 1226(c), like Petitioner here, are subject to civil detention rather than criminal incarceration. Chavez-Alvarez v. Warden York County Prison, 783 F.3d 469, 477 (3d Cir. 2015). The more the conditions under which the alien is being held resemble penal confinement, the stronger her argument, and "[a]s the length of the detention grows, the weight given to this aspect of [her] detention increases." Id. Furthermore, other Courts in this District here too have found that this factor weighs in a petitioner's favor where the petitioner is being held in a county jail. Muse,

2018 WL 4466052, at *5. In the present case, the Court finds that this third factor also weighs in Petitioner's favor.

Currently, Petitioner, who is a civil detainee, is being held in the Kandiyohi County Jail, a criminal detention facility, in Willmar, Minnesota. Like in Muse, supra, Petitioner here is similarly being detained in a county jail alongside inmates serving criminal sentences. Thus, because the current conditions of Petitioner's detention strongly resemble penal confinement, this factor also weighs in Petitioner's favor.

Fourth, Courts consider the nature and extent of any delays in the removal proceedings caused by the alien. "An alien should not be punished for raising legitimate defenses to removal." Muse, 2018 WL 4466052 at *5; see, Ly, 351 F.3d at 272 ("An alien who would not normally be subject to indefinite detention cannot be so detained merely because [she] seeks to explore avenues of relief that the law makes available to [her].") Indeed, "the mere fact that a noncitizen opposes [her] removal is insufficient to defeat a finding of unreasonably prolonged detention, especially where the Government fails to distinguish between bona fide and frivolous arguments in opposition." Hernandez v. Decker, 2018 WL 3579108, at *9 (S.D.N.Y. July 25, 2018). Courts should, however, be "sensitive to the possibility that dilatory tactics by the removable alien may serve not only to put off the final day of deportation, but also to compel a determination that the alien must be released because of the length of [her] incarceration." Ly, 351 F.3d at 272. If Courts did not take into account the alien's role in delaying removal proceedings, they "would encourage deportable criminal aliens to raise frivolous objections and string out the proceedings in the hopes that a federal court will find the delay 'unreasonable' and order their release." Id.

Here, in opposition to the present petition, the Government has not discussed the merits of any of Petitioner's arguments in the pending appeal before the Eighth Circuit Court of Appeals, which overlooks a key part of a fact-dependent inquiry. See, e.g., Hernandez, 2018 WL 3579108, at *9 (noting that the "government's failure to parse [petitioner's] arguments overlooks a key part of a fact-dependent inquiry."); Chavez-Alvarez, 783 F.3d at 477 (noting that while the respondent "undoubtedly is responsible for choosing to challenge [her] removal by raising complicated issues that have taken a lot of time to argue and decide . . . this does not undermine [her] ability to claim that [her] detention is unreasonable."); Gordon, 2015 WL 1176706, at *5 ("Moreover, it would be unreasonable to penalize [petitioner] for exercising [her] right to challenge removal by requiring [her] to be detained while [s]he exercises that right . . . .").

Instead, Respondents simply argue that Petitioner is responsible in part for her prolonged detention because she moved to reopen and stay her removal proceedings pending the adjudication of her U and T visa applications; because she appealed the BIA denial of her motion to reopen and stay her removal proceedings pending the adjudication of her U and T visa applications; because she sought, and received, a stay of removal from the Eighth Circuit Court of Appeals; and because she obtained four extensions to file briefs before the Eighth Circuit Court of Appeals.

The Court finds Respondents' arguments to be unpersuasive. First, as already noted above, "[a]n alien should not be punished for raising legitimate defenses to removal." Muse, 2018 WL 4466052 at *5. Accordingly, Petitioner's seeking to pursue all lawful avenues of relief available to her will not be found here to weigh against her. Moreover, obtaining "a stay of removal from the Eighth Circuit does not constitute a dilatory tactic to put off the final day of

deportation," and obtaining such a stay of removal should not weigh against a petitioner. <u>Tua Mene Lebie B.</u>, 2019 WL 5715703, at *4.

As for the extensions Petitioner sought in filing briefs before the Eighth Circuit Court of Appeals, Respondents argument overlooks the fact that at least some of those extension were sought shortly after the Eighth Circuit Court of Appeals consolidated Petitioner's appeals. In addition, there is nothing in the record now before the Court to suggest that these extensions were "the type of [dilatory or frivolous] delay anticipated by this analysis." <u>See</u>, <u>Tua Mene Lebie B.</u>, 2019 WL 5715703, at *5. Instead, "[t]his factor is meant to get at 'deportable criminal aliens [raising] frivolous objections and string[ing] out the proceedings in the hopes that a federal court will find the delay 'unreasonable' and order their release.'" <u>Tua Mene Lebie B.</u>, 2019 WL 5715703, at *5 (quoting <u>Muse</u>, 2018 WL 4466052, at *5).

Thus, the Court finds that there is no evidence in the present record to suggest that Petitioner has engaged in any dilatory tactics with regard to her reasonable pursuit of the lawful remedies available to her. Based on the record presently before the Court, Petitioner has merely raised non-frivolous arguments in support of her position on appeal. Therefore, the Court finds this fourth factor too weighs in Petitioner's favor.

Fifth, Courts consider the nature and extent of any delays in the removal proceedings caused by the Government. "Continued detention will also appear more unreasonable when the delay in proceedings was caused by the immigration court or other non-ICE government officials." <u>Sajous</u>, 2018 WL 2357266, at *11.

Like Petitioner, there is nothing in the present record to suggest that the Government has engaged in any dilatory tactics. Similar to Petitioner, the Government has merely made non-

frivolous arguments in support of its position, and the Petitioner has not argued otherwise. This fifth factor thus weighs in the Government's favor.

Lastly, Courts consider the likelihood that the proceedings will culminate in a final removal order. While not singularly determinative, the more likely that the alien will ultimately be removed, the longer the detention that may be deemed reasonable. See, Muse, 2018 WL 4466052, at *6.

This sixth factor does not weigh strongly in either party's favor in the present case. The fact that the BIA denied Petitioner's appeal of the immigration judge's order that Petitioner be removed does not weigh in Petitioner's favor. However, Petitioner has appealed that decision to the Eighth Circuit Court of Appeals. And at least one other Court in this District has noted that receiving a stay of removal from the Eighth Circuit Court of Appeals, as Petitioner here has received, demonstrates a "high likelihood of" success on appeal. See, Enrique U.R., 2019 WL 4120149, at *3. Further complicating this factor, neither party has substantially characterized the arguments made on appeal, and thus, this Court does not have a sufficient basis to determine whether Petitioner is ultimately likely or unlikely to be removed.

In summary, the Court finds the cumulative weight of the present record weighs heavily in Petitioner's favor. The undersigned therefore finds that continuing to detain Petitioner beyond the nineteen months she has already been detained, without any bond hearing, violates her due process rights under the Fifth Amendment.[6]

## V.    Particular Relief Requested

As relief, Petitioner seeks immediate release or, in the alternative, an Order requiring the Respondents to convene a bond hearing before an immigration judge. (Pet., [Docket No. 1], at

---

[6] Because the Court has determined that Petitioner's continued detention violates her due process rights under the Fifth Amendment, the Court does not reach Petitioner's argument that her continued detention without a bond hearing violates rights secured under the Eighth Amendment.

28–29). Specifically, Petitioner also requests that this Court require the immigration judge to impose the burden of proof upon the Government to demonstrate "by clear and convincing evidence that Petitioner present a risk of flight or danger," if the Government seeks to continue detention. (Id. at 29).

In this District, however, other Courts have regularly declined to grant immediate release and held that "the appropriate remedy is to order the agency detaining [the alien] to hold a bond hearing in the very near future." Tua Mene Lebie B., 2019 WL 5747817, at *6; see, Abshir H.A. v. Barr, No. 19-cv-1033 (PAM/TNL), 2019 WL 3719414, at *3 (D. Minn. Aug. 7, 2019). Moreover, Courts in this District have consistently "declined to 'render an advisory opinion'" on the burden of proof to be applied at the bond hearing and held that "the burden of proof and the quantum of proof at the bond hearing are decisions for the immigration judge in the first instance." Tua Mene Lebie B., 2019 WL 5747817, at *6 (quoting Bolus A.D. v. Sec'y of Homeland Sec., 376 F. Supp 3d 959, 963 (D. Minn. 2019)); see, Abshir H.A.,  2019 WL 3719414, at *3; Jamal A., 358 F. Supp. 3d at 860 n.6; Muse, 409 F. Supp. 3d at 718.

The undersigned finds the reasoning of the other Courts in this District to be persuasive and agrees that an expeditious bond hearing is the appropriate remedy. Similarly, the undersigned agrees that the burden of proof and quantum of proof are a decision left for the immigration judge to determine in the first instance.

Therefore, to the extent the present Petition seeks an Order of this Court requiring the immigration judge to impose a specific burden of proof upon the Government if it seeks to continue detention, the undersigned recommends the Petition be **DENIED**. Similarly, to the extent the Petition seeks immediate release, the undersigned recommends the Petition be **DENIED**.

However, for the reasons discussed above, the undersigned recommends that Petitioner's request for a bond hearing be **GRANTED**.[7] The undersigned further recommends said bond hearing be required to be conducted within twenty-one days of the date on which this Report and Recommendation may be adopted.

## VI.    Objection Period

The undersigned notes that one last issue warrants discussion—the time in which the parties are permitted to object to the present Report and Recommendation, if they so choose.

This Report and Recommendation is not an Order or judgment of the District Court, and it is, therefore, not appealable directly to the Eighth Circuit Court of Appeals. Instead, Local Rule 72.2(b)(1) provides that "[a] party may file and serve specific written objections to a magistrate judge's" Report and Recommendation, such as the present Report and Recommendation, "within 14 days after being served with a  copy of the" Report and Recommendation, "unless the court sets a different deadline." LR 72.2(b)(1). A party may then respond to those objections within fourteen days after being served a copy of the objections.  LR 72.2(b)(2). Thus, under normal circumstances a party would be permitted fourteen (14) days in which to file its objections to the present Report and Recommendation, if it chooses to object, and then the opposing party would be permitted an additional fourteen (14) days in which to file its response to said object, if it so chooses. See, Id.

In the present case, however, Petitioner's prolonged detention would be unnecessarily further prolonged by this objection period to the point that the time limit in which the undersigned recommends the bond hearing be conducted would be nearly doubled. Thus, if the

---

[7] At that bond hearing, the parties must be allowed to present evidence and arguments regarding whether Petitioner is a danger to the community and whether Petitioner is likely to flee if she is not detained. Such a hearing will protect both Petitioner's rights under the Due Process Clause and the Government's legitimate interest in detaining a removable alien when such detention is necessary to serve the purposes of § 1226.

parties were permitted the full objection period, comprised of twenty-eight days, then the relief recommended by the undersigned would be materially diminished because Petitioner would have been detained for an additional month or more without an opportunity for a bond hearing.

Therefore, the Court, in its inherent power to manage pending litigation, shortens to seven (7) days the time in which any party is permitted to object to the present Report and Recommendation, and corresponding, the Court shortens to seven (7) days the time in which any party is permitted to respond to any objection to the present Report and Recommendation. An objection period of any longer duration would undermine the recommended relief.

## VII.    Conclusion

Therefore, based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. The Petition for Writ of Habeas Corpus, [Docket No. 1], be **GRANTED in part and DENIED in part**;

2. To the extent the present Petition seeks a bond hearing, the Petition be **GRANTED**;

3. To the extent the Petition seeks an Order of this Court establishing the burden of proof required to be demonstrated at said bond hearing, the Petition be **DENIED**;

4. To the extent the Petition seeks immediate release, the Petition be **DENIED**;

5. If the present Report and Recommendation is adopted, the immigration judge be required to conduct a bond hearing by no later than twenty-one (21) days after the date this Report and Recommendation is adopted; and

6. If the present Report and Recommendation is adopted and the immigration judge fails to timely conduct a bond hearing relative to Petitioner within the twenty-one (21)

days permitted, Petitioner shall be released from custody no later than thirty (30) days from the date that this Report and Recommendation is adopted.

Dated: May 6, 2020                                    s/ Leo I. Brisbois
                                                      Hon. Leo I. Brisbois
                                                      United States Magistrate Judge